[Cite as *State v. Flynn*, 2026-Ohio-2820.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff- Appellee,                    :

                                                No. 115654

v.                                                :

BILLY FLYNN,                                      :

    Defendant-Appellant.                    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689577-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah J. Denney and Daniel T. Van, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Billy Flynn ("Flynn") appeals from the judgment of his convictions for multiple counts of rape and gross sexual imposition ("GSI") involving four minor female victims. Flynn alleges (1) the evidence presented at trial

was insufficient to support his convictions, (2) his convictions are against the manifest weight of the evidence, and (3) the trial court erred by allowing the State to amend the indictment over his objection.

{¶ 2} After a thorough review of the record and applicable law, we overrule each assignment of error and affirm his convictions

## I. Background Overview

### A. Relevant Facts

#### 1. Victim T.F.

{¶ 3} T.F. was born in 2002. She testified that in 2012, when she was 9 years old, she and her sister, M.F., would often go to her Grandma Rose's house so that she could watch them. Flynn was married to Rose, and T.F. stated that she thought of him as her grandpa. He was often around when her grandmother was watching them. At times, her grandmother would leave the house to play bingo, leaving the girls with Flynn.

{¶ 4} T.F. testified that one day, she was sitting on the couch in the living room when Flynn began inappropriately touching her vagina. She stated that Flynn used his hand to touch the inside of her vagina. They were both clothed while this occurred.

{¶ 5} Afterwards, T.F. said she "was freaking out" and that the first person she told what happened to her was her dad. She then told her mother who took T.F. to the hospital where a sexual assault kit was done. DNA foreign to T.F. was found, but the amount was so low that no conclusions about that individual could be made.

The Cleveland Division of Police was contacted on July 4, 2012, concerning this offense. T.F. testified that she and her sisters never went back to her grandmother's house again and that she never saw Flynn after that day.

### 2. Victim S.D.

{¶ 6} S.D. was born in 1996. She stated that when she was younger, she began living with her grandmother and Flynn during the summers. She stated that she would sleep in their living room, either on the couch, a recliner, or the floor.

{¶ 7} S.D. testified that when she was 5 years old, she was in the living room with Flynn. Flynn was sitting in the brown recliner that he sat in every day. She stated that Flynn pulled his "private area" out and started "playing with it" and asked S.D. to help him. Flynn wanted S.D. to "jerk him off" and "put it in [her] mouth," which S.D. did. S.D. stated that she was 5 years old at the time and thought this was normal. This went on until she was about 11 years old. S.D. testified that this would happen "every day, multiple times a day" and sometimes they would be fully naked when this happened.

{¶ 8} S.D. testified that after she finished performing this sexual act on Flynn, he would perform oral sex on her. She stated that she would sit on the top part of the recliner and Flynn would kneel in front of her and put her vagina in his mouth. Flynn would sometimes also do this while they were on the floor. S.D. testified that Flynn's tongue "did go inside me." She further stated that sometimes her grandmother would be home when this occurred. S.D. said that she believed Flynn was going to be her husband one day.

{¶ 9} S.D. testified that when she was 7 or 8 years old, she would go into the attic with Flynn. She stated that she would take her clothes off and that they would perform oral sex on each other.

{¶ 10} S.D. testified with respect to a specific incident that occurred when she was 9 years old. She stated that she and Flynn were on the recliner and Flynn was performing a "sex act" on her and the recliner fell. She stated that even though the recliner had just fallen, "it didn't stop what was happening when I fell." She stated that "this was a funny memory," which is how she remembered it.

{¶ 11} S.D. also testified that when she was 11 years old, she and Flynn were lying in a bed Flynn made on the floor. They were watching television when Flynn told her that "we're going to try for penetration now." S.D. stated that she was not "opening her legs," but Flynn was "attempting to just go in through [her] butt" but that it "wouldn't go." S.D. stated that she was so scared that she jumped up and ran, fully naked, to her grandmother and laid down with her. S.D. told her grandmother what occurred, but her grandmother told her just to lay down.

{¶ 12} S.D. stated that she eventually became aware of the case pending against Flynn concerning her cousin, T.F. In 2022, S.D. came forward with her account.

### 3. Victim K.D.

{¶ 13} K.D. was born in 1995. K.D. testified that when she was 4 years old, Flynn started babysitting her. Flynn used to be married to K.D.'s aunt Darlene but when he started babysitting K.D., Flynn was married to Rose.

{¶ 14} When K.D. was 4 years old, Flynn was babysitting her. While there, she stated Flynn took her into his room, laid her down on the bed, lifted up her skirt, and began to touch her vaginal area, as well as her buttocks. She stated that she did not know what part of his body he was using when he touched her, but that she would "feel him, just, like grinding against me but other times I would feel penetration, but I don't know what it was from." K.D. testified that she was lying on her stomach and Flynn would be on top of her. She stated that she was scared while this was happening but also did not understand that it was wrong because she was so young and trusted Flynn.

{¶ 15} K.D. stated that when it was over, Flynn went to the bathroom and gave her a washcloth to clean herself up with it. Flynn told her not to tell anybody what happened, telling her that nobody would believe her. While cleaning herself, K.D. said she saw blood but was unsure where it had come from, either her vagina or anus.

{¶ 16} K.D. testified that there were other incidents that occurred when other kids were also present in the home. She stated that she would go into Flynn's room with him and the same thing would happen. She stated that these incidents would occur with some frequency. K.D. said that she would go along with it because she did not want anybody else to have to go through it. She testified that sometimes when this occurred, Rose would be in the house.

{¶ 17} K.D. stated that when she was older, she saw a presentation concerning sexual assault, which triggered memories of what had happened to her.

She eventually told her Aunt Jaden what had happened to her. However, when she first disclosed what had happened, she said it was her uncle's friend who did it, rather than Flynn. She stated that she was scared and did not want to get Flynn in trouble.

### 4. Victim M.F.

{¶ 18} M.F. was born in 2004 and is the sister of T.F. M.F. testified that Flynn had been married to her grandmother Rose. M.F. testified that they would often go to her grandmother's house so that she could babysit them and that Flynn would often watch them. M.F. stated that at first "it was fine," then Flynn started taking T.F. into a room by herself. Flynn eventually started taking her as well.

{¶ 19} M.F. stated that one day, when Flynn was the only adult in the house, Flynn wanted to give T.F. a shower. M.F. stated that she could not remember how old she was at this time, but that she "was a little bit older" than a kindergartner. M.F. stated that she knew what taking T.F. into the shower meant "because he was already doing it before," so she started crying, and told Flynn to take her into the shower instead, in order to protect T.F.

{¶ 20} M.F. stated that she knew what Flynn wanted to do to T.F. because previously Flynn had taken her (M.F.) into his bedroom to "do things." M.F. stated that on the day before the "shower incident," Flynn took her into his room, pulled his pants down, and told M.F. to "suck his penis," which she did. M.F. stated that the first time anything sexual had taken place was in an office-type room. She stated

that Flynn would have her sit on his lap and he would start whispering into and licking her ear.

{¶ 21} The following day, the "shower incident" took place, where M.F. went into the shower with Flynn in order to protect T.F. She stated that Flynn was touching the inside and outside of her vagina and remembered Flynn "moving his fingers around inside of my body." Flynn then asked M.F. to touch his penis, which she did. M.F. testified that she was scared while this was happening, but happy that it was happening to her instead of her sister.

{¶ 22} M.F. said that there was another incident that occurred in the office in which Flynn was trying to touch her when she ran into the kitchen by her grandmother. As a result, nothing happened that day. M.F. also testified that she would go on walks with Flynn and he would take her under "these hanging trees" and "make me kiss him."

{¶ 23} M.F. testified that she finally told her cousin about what happened to her and her cousin eventually told M.F.'s mother.

**B. Indictment**

{¶ 24} In 2024, Flynn was charged by the Cuyahoga County Grand Jury in a 17-count indictment. The indictment charged Flynn as follows.

{¶ 25} Counts 1 and 2 pertain to victim T.F.[1]

1. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of

---

[1] The indictment initially referred to T.F. as Jane Doe 1.

age, with a sexual violent predator specification, to wit: digital penetration
Date of offense: On or about July 2, 2012

2. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: vaginal intercourse
Date of offense: On or about July 2, 2012

{¶ 26} Counts 3 through 11 pertain to victim S.D.[2]

3. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: fellatio
Date of offense: On or about September 1, 2001 through September 30, 2001

4. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: cunnilingus
Date of offense: On or about September 1, 2001 through September 30, 2001

5. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: fellatio
Date of offense: On or about June 1, 2002 through August 31, 2002

6. Gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: rubbed genitals
Date of offense: On or about June 1, 2002 through August 31, 2002

7. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age,

---

[2] The indictment initially referred to S.D. as Jane Doe 2.

with a sexual violent predator specification, to wit: digital penetration of vagina
Date of offense: On or about July 1, 2007 through July 15, 2007

8.     Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: fellatio
Date of offense: On or about July 1, 2007 through July 15, 2007

9.     Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: anal intercourse
Date of offense: On or about July 1, 2007 through July 15, 2007

10.     Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: fellatio
Date of offense: On or about June 1, 2008 through August 31, 2008

11.     Gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: rubbed genitals
Date of offense: On or about June 1, 2008 through August 31, 2008

{¶ 27} Counts 12 through 14 pertain to victim K.D.[3]

12.     Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: digital penetration of vagina
Date of offense: On or about May 1, 2010 through August 31, 2010

13.     Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of

_____

[3] The indictment initially referred to K.D. as Jane Doe 3.

age, with a sexual violent predator specification, to wit: digital penetration of anus

Date of offense: On or about May 1, 2010 through August 31, 2010

14. Gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: rubbed body with penis

Date of offense: On or about May 1, 2010 through August 31, 2010

{¶ 28} Counts 15 through 17 pertain to victim M.F.[4]

15. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: digital penetration of vagina

Date of offense: On or about June 1, 2011 through August 31, 2011

16. Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: fellatio

Date of offense: On or about June 1, 2011 through August 31, 2011

17. Gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4), the victim less than thirteen years of age, with a sexual violent predator specification, to wit: rubbed genitals

Date of offense: On or about June 1, 2011 through August 31, 2011

**C. Trial and Verdict**

{¶ 29} A bench trial began on June 30, 2025. At the conclusion of the trial, the State moved to amend the dates set forth in the indictment. In addition, the

---

[4] The indictment initially referred to M.F. as Jane Doe 4

State moved to amend the "to wit" clauses in Counts 12 and 13, removing the word "digital" and replacing it with "penetration of vagina" in Count 12 and "penetration of anus" in Count 13. The State moved to amend the "to wit" clause in Count 14 to remove the words "with penis." Flynn objected to the State's amendments.

{¶ 30} Flynn also moved for a judgment of acquittal pursuant to Crim.R. 29 with respect to Counts 1 and 2. The State responded, agreeing that Count 2 should be dismissed. The trial court agreed, dismissing Count 2 and overruling Flynn's Crim.R. 29 motion with respect to the other counts.

{¶ 31} The trial court returned a verdict finding Flynn guilty of the following offenses:

> Counts 1, 9, 12, 13, and 15: Gross Sexual Imposition (lesser included), of a child less than 13 years of age, felonies of the third degree;
>
> Counts 6, 11, 14, and 17: Gross Sexual Imposition, of a child less than 13 years of age, felonies of the third degree; and
>
> Counts 7, 8, and 10: Rape, felonies of the first degree.

{¶ 32} The court found Flynn not guilty of the remaining offenses.

{¶ 33} A sexually violent predator hearing was held on September 3, 2025. At the conclusion of the hearing, the court found Flynn to be a sexual violent predator with respect to the sexual violent predator specifications attached to Counts 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 17.

**D. Sentencing**

{¶ 34} Sentencing was held on September 3, 2025. The court imposed terms of life without the possibility of parole for the rape offenses and terms of five years

in prison for each offense of GSI.  Flynn was also designated a Tier III sex offender/child offender.

**E. Appeal**

{¶ 35} Flynn appeals his convictions, presenting three assignments of error for our review:

1. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

2. The convictions for [sic] were against the manifest weight of the evidence.

3. Allowing the State to amend the indictment pursuant to Crim.R. 7(D) and over defense objection violated due process and the right to a fair trial.

## II. Law and Analysis

**A. First Assigned Error for Review — Crim.R. 29 Sufficiency**

{¶ 36} In his first assigned error for review, Flynn argues that the evidence presented at trial is insufficient evidence to support his convictions and that the trial court should have granted his Crim.R. 29 motion for acquittal.  After a thorough review of the record, we find that the evidence was sufficient to support his multiple convictions for rape and GSI.

**1. Standard of Review**

{¶ 37} A motion for judgment of acquittal under Crim.R. 29 "questions whether the evidence is sufficient to establish beyond a reasonable doubt the elements necessary to support the convictions." *State v. Walker,* 2026-Ohio-1767,

¶ 38 (8th Dist.). As such, "'[w]e apply the same standard of review to a trial court's ruling on a Crim.R. 29 motion as we do in reviewing challenges to the sufficiency of the evidence presented at trial.'" *Id.,* quoting *State v. McQuisition,* 2024-Ohio-3011, ¶ 24 (8th Dist.).

{¶ 38} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Wilborn,* 2024-Ohio-5003, ¶ 37 (8th Dist.), citing *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). In reviewing a challenge based on sufficiency, we must "'determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.'" *State v. Webb,* 2025-Ohio-456, ¶ 9 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. A sufficiency review "is not a factual determination, but a question of law." *State v. Jackson,* 2025-Ohio-109, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

{¶ 39} When reviewing the evidence, we must keep in mind that "[p]roof of guilt may be supported 'by circumstantial evidence, real evidence, and direct evidence, or any combination of all three, and all three have equal probative value.'" *Wilborn* at ¶ 38, quoting *State v. Radano,* 2017-Ohio-1034, ¶ 35 (8th Dist.). And although each type of evidence has their obvious differences, "those differences are

irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence." *Id.,* citing *State v. Cassano,* 2012-Ohio-4047, ¶ 13 (8th Dist.). Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

### 2. Analysis

#### a. Rape Convictions – Counts 7, 8, and 10

{¶ 40} Flynn was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which provides, in relevant part:

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:
>
> . . .
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 41} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." The statute makes clear, "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶ 42} Count 7 charged Flynn with rape, alleging digital penetration of S.D.'s vagina. Flynn alleges that S.D. did not provide any testimony that Flynn digitally penetrated her vagina.

{¶ 43} S.D. testified that when she was 5 years old, she started engaging in sexual activity with Flynn. She testified that until she was 11 years old, almost every day, multiple times a day, she would put Flynn's penis in her mouth and, when she was finished, Flynn would perform oral sex on her. She testified in detail that she would sit on the top part of the recliner and Flynn would kneel in front of her and put her vagina in his mouth. He would sometimes do this while on the floor. S.D. testified that Flynn's tongue "did go inside me."

{¶ 44} We agree that the evidence does not demonstrate Flynn penetrated S.D. with his fingers. Nonetheless, this evidence is sufficient to demonstrate a rape occurred under R.C. 2907.02(A)(1)(b). We have recognized that the type of sexual conduct is not an element of the offense of rape. *State v. Palmer-Tesema,* 2020-Ohio-907, ¶ 70 (8th Dist.). Here, S.D.'s testimony alone is sufficient to support the trial court's finding that Flynn raped S.D., either by cunnilingus or another form of penetration. *State v. Jones,* 2020-Ohio-3367, ¶ 71 (8th Dist.) (noting that "[a] conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony be corroborated to be believed"), citing *State v. Flores-Santiago,* 2020-Ohio-1274, ¶ 38 (8th Dist.).

{¶ 45} We have recognized that "cunnilingus" is defined as "a sexual act committed with the mouth and the female sex organ." *State v. Al-Shami,* 2026-Ohio-453, ¶ 39 (8th Dist.), citing *Ohio Jury Instructions,* 2 CR § 507.02(A)(1) (Rev. Jan. 22, 2011). Penetration of the vagina "is not required to demonstrate cunnilingus occurred." *Id.* at ¶ 41, citing *State v. Lynch,* 2003-Ohio-2284, ¶ 86.

Nonetheless, R.C. 2907.01(A) provides that "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." As such, the evidence presented at trial was sufficient to support a conviction of rape in Count 7.

{¶ 46} With respect to the rape convictions in Counts 8 and 10, the indictment alleged sexual conduct via fellatio. Flynn claims that S.D.'s testimony "does not provide evidence tying each count to a separate, identifiable incident of rape-level conduct . . . as opposed to a generalized description and sweeping numerical estimates." Flynn is incorrect.

{¶ 47} S.D. testified that from the age of 5 until she was 11 years old, she engaged in sexual activity with Flynn daily. But contrary to Flynn's claim, she testified to specific identifiable incidents she recalled, each with differentiating details. For example, S.D. testified that when she was 7 or 8 years old, she would go up into the attic with Flynn. Flynn would take her clothes off, and they would perform oral sex on each other.

{¶ 48} S.D. testified that another time, when she was 9 years old, she and Flynn were on the recliner and Flynn was performing a sex act on her and the recliner fell. She stated that even though the recliner had just fallen, they did not stop. S.D. testified that she remembered the story because it "was funny at that moment but it didn't stop what was happening when I fell. We just continued."

{¶ 49} S.D. testified with respect to separate identifiable acts of oral sex that Flynn engaged in with her. The details differed concerning her age, when the acts occurred, where the acts occurred, and how they occurred. As such, we disagree

with Flynn's description of S.D.'s testimony as a "generalized description and sweeping numerical estimates." For these reasons, we find that S.D.'s testimony was sufficient to support the trial court's guilty verdicts concerning Flynn's rape convictions.

### b. Gross-Sexual-Imposition Convictions

{¶ 50} Flynn was also convicted of multiple counts of GSI, with respect to each minor female victim, in violation of R.C. 2907.05(A)(4). R.C. 2907.05(A)(4) provides:

> (A) No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> . . .
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 51} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." "While the Ohio Revised Code does not define sexual arousal or sexual gratification, R.C. 2907.01(B) "'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.""" *State v. Boyd,* 2024-Ohio-1059, ¶ 29 (8th Dist.), quoting *State v. Tate,* 2013-Ohio-370, ¶ 18 (8th Dist.), quoting *State v. Astley,* 36 Ohio App.3d 247, 250 (10th Dist. 1987).

### i. GSI Conviction — Victim T.F. — Count 1

{¶ 52} With respect to his conviction for GSI against T.F., to the extent Flynn challenges T.F.'s credibility, "the credibility of witnesses is a matter primarily for the trier of fact and is not to be considered in a sufficiency argument as credibility goes to the weight of the evidence." *State v. Erker,* 2019-Ohio-3185, ¶ 83 (8th Dist.). As a result, whether T.F.'s testimony was credible "has no bearing on our sufficiency analysis." *Id.*

{¶ 53} Flynn claims that even if some touching had occurred between T.F. and Flynn, there was "no evidence that it was intentional or that it was done for purpose of sexually arousing or gratifying either person."

{¶ 54} To prove GSI, the State must present sufficient evidence that the contact was for a sexual purpose. However, in doing so, "'there is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *Tate,* 2013-Ohio-370, ¶ 19 (8th Dist.), quoting *State v. Meredith,* 2005-Ohio-2664, ¶ 13 (12th Dist.). Rather, in determining whether sexual contact occurred, "the trier of fact may infer from the evidence presented at trial whether the defendant's contact with the areas of the body outlined in R.C. 2907.01 was for the purpose of sexual arousal or gratification." *State v. Fears,* 2017-Ohio-6978, ¶ 65 (8th Dist.). "The purpose of the contact may be inferred from the type, nature, and circumstances of the contact." *Id.,* citing *Tate* at ¶ 20. "Accordingly, '[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the

defendant's motivation was achieved.'" *Id.,* quoting *State v. Cobb,* 81 Ohio App.3d 179, 185 (9th Dist. 1991).

{¶ 55} Here, T.F. testified that she was sitting on the couch in the living room when Flynn began inappropriately touching her vagina. She stated that Flynn used his hand, touching the inside of her vagina. We conclude from this evidence that the trial court could rationally infer that Flynn touched T.F.'s vagina, which is listed as an "erogenous zone" under R.C. 2907.01(B), for his own sexual arousal or gratification. As such, the evidence presented was sufficient to support Flynn's conviction of GSI against T.F.

### ii. GSI Convictions — Victim S.D. — Counts 6, 9, and 11

{¶ 56} Count 9 originally charged Flynn with rape, alleging that Flynn engaged in anal intercourse with S.D. Flynn is correct when he claims that there was no testimony that anal intercourse occurred. However, the trial court did not find Flynn guilty of rape under this count. Rather, the trial court found him guilty of the lesser-included offense of GSI, in violation of R.C. 2907.05(A)(4).

{¶ 57} While a conviction for rape would require proof that Flynn penetrated S.D.'s anus, GSI does not require a proof of penetration. Instead, GSI only requires evidence that Flynn touched an erogenous zone of S.D., which includes "the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). *See State v. Garner,* 2008-Ohio-1949, ¶ 16 (8th Dist.) ("Merely touching a covered erogenous zone is sufficient.").

{¶ 58} As discussed above, S.D. testified about separate identifiable acts of oral sex that she and Flynn engaged in. The details differed concerning her age, when the acts occurred, where the acts occurred, and how they occurred. And the trial court was permitted to infer, because of the nature of the acts S.D. testified to, including the contact with her vagina, that the purpose was for Flynn's own sexual arousal. For these reasons, the evidence was sufficient to support Flynn's convictions of GSI against S.D.

### iii. GSI Convictions — Victim K.D. — Counts 12, 13, and 14

{¶ 59} Counts 12 and 13 originally charged Flynn with rape, alleging that Flynn digitally penetrated K.D.'s vagina and anus respectively. The trial court found Flynn guilty of the lesser-included offense of GSI on each count. The court also found Flynn guilty of GSI as originally charged in Count 14.

{¶ 60} Flynn alleges that with respect to Counts 12 and 13 there was "insufficient evidence to conclude Flynn penetrated [K.D.] vaginally or anally with anything." Again, Flynn was not convicted of rape under these counts. Rather, he was convicted of GSI and, as discussed above, the charge of GSI does not require proof of penetration. Here, K.D. testified that when she was 4 years old, Flynn took her into his room, laid her down on the bed, lifted her skirt, and began to touch her vaginal area and her buttocks. K.D. testified she did not know what part of his body he was touching her with but that she would feel him grinding against her, while at other times, she would feel penetration, but did not know from what. When it ended, Flynn told her not to tell anybody what happened because he told her nobody

would believe her. While she was cleaning herself, she saw blood. She stated that she was unsure whether the blood had come from her vagina or anus. K.D. testified there were other times that this occurred in Flynn's room and these incidents occurred frequently.

{¶ 61} A rational factfinder could infer that Flynn touched K.D.'s vaginal area and buttocks for his own sexual arousal. As such, there was sufficient evidence to support Flynn's GSI convictions on Counts 12 and 13.

{¶ 62} With respect to Count 14, Flynn claims that there was insufficient evidence to support a conviction for GSI because K.D. did not know what had penetrated her when Flynn was grinding against her. However, a conviction for GSI only requires proof that the defendant touched an erogenous zone of the victim for the purpose of sexual gratification. What the defendant used to make contact with the victim is not an element of the offense. K.D. testified that Flynn was grinding against her and, at times, she felt penetration but did not know what from. Further, she testified that Flynn touched her vaginal area and her buttocks. This testimony was sufficient to support Flynn's conviction for GSI on Count 14.

{¶ 63} Flynn also challenges K.D.'s credibility. However, as discussed above, a victim's credibility has no bearing in our sufficiency analysis. *Erker,* 2019-Ohio-3185, at ¶ 83 (8th Dist.).

### iv.  GSI Convictions — Victim M.F. — Counts 15 and 17

**{¶ 64}** Count 15 charged Flynn with the rape of M.F.  Count 17 charged Flynn with GSI concerning M.F.  The trial court found him guilty of the lesser-included offense of GSI on Count 15 and guilty of GSI as charged in Count 17.

**{¶ 65}** Flynn first argues that M.F.'s testimony is insufficient to demonstrate that Flynn's actions were done for a sexual purpose.  M.F. testified that when she was a little older than a kindergartner, Flynn took her into his bedroom to "do things."  She stated that Flynn brought her to his room, pulled his pants down, and told M.F. to "suck his penis," which she did.  M.F. testified that Flynn would have her sit on his lap and he would start whispering into and licking her ear.

**{¶ 66}** M.F. testified that the following day, she went into the shower with Flynn.  She stated Flynn was touching the inside and outside of her vagina and that he was "moving his fingers around inside of my body."  Flynn then asked M.F. to touch his penis, which she did.  M.F. also testified that she would go on walks with Flynn and he would take her under "these hanging trees" and "make [her] kiss him."

**{¶ 67}** A rational trier of fact could infer from M.F.'s testimony that Flynn touched her vagina and  M.F. had to "suck his penis," that Flynn did this for the purpose of his own sexual gratification.  Furthermore, M.F. testified concerning at least two separate incidents that occurred on two separate and identifiable days.  M.F.'s testimony was sufficient to support Flynn's convictions for GSI on Counts 15 and 17.

{¶ 68} For the foregoing reasons, we find that the evidence presented was sufficient to support Flynn's convictions for rape and GSI against M.F. Accordingly, Flynn's first assignment of error is overruled.

**B. Second Assigned Error for Review — Manifest Weight**

{¶ 69} In his second assigned error for review, Flynn alleges that his convictions are against the manifest weight of the evidence. For the following reasons, we disagree.

**1. Standard of Review**

{¶ 70} In contrast to a sufficiency challenge, a challenge with respect to the "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief."'" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained ""only in the exceptional case in which the evidence weighs heavily against the conviction."'" *State v. Dodson,* 2025-Ohio-

1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### 2. Analysis

{¶ 71} Flynn's challenge primarily focuses on the credibility of the minor victims, alleging that their testimony was inconsistent and indicative of collusion between them.

{¶ 72} When conducting a review under a manifest-weight challenge, we are mindful of the presumption in favor of the finder of fact and, "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *Z.C.* at ¶ 14. The underlying rationale of giving deference to the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 73} Here, Flynn alleges that the testimony of the victims was inconsistent and that their stories tended to "evolve" over time. For example, Flynn alleges that K.D.'s trial testimony "materially differed" from her recorded interviews. He also alleges that M.F.'s testimony "evolved" by including earlier incidents that she did not disclose in earlier interviews. With respect to T.F.'s testimony, Flynn claims she

is not credible because days after the alleged incident, she denied any penetration had occurred.

{¶ 74} It is well established that "'inconsistencies or contradictions in a witness's testimony do not entitle a defendant to a reversal of a trial.'" *State v. Gilmore,* 2026-Ohio-577, ¶ 26 (8th Dist.), quoting *State v. Rentas,* 2024-Ohio-732, ¶ 16 (8th Dist.), citing *State v. Solomon,* 2021-Ohio-940, ¶ 62 (8th Dist.). "Nor does the presence of conflicting testimony render a verdict against the manifest weight of the evidence." *State v. Clark,* 2025-Ohio-5342, ¶ 52 (8th Dist.), citing *State v. Pace,* 2025-Ohio-2874, ¶ 62 (10th Dist.); *accord State v. Fluker*, 2026-Ohio-1278, ¶ 64 (8th Dist.). As such, "[t]he trier of fact is free to accept or reject any or all testimony of any witness." *Parma v. Singh,* 2018-Ohio-5235, ¶ 21 (8th Dist.), citing *State v. Smith,* 2010-Ohio-4006, ¶ 16 (8th Dist.).

{¶ 75} Flynn also alleges that with respect to T.F.'s testimony, the lack of corroborating DNA or physical evidence strengthens a finding that his conviction concerning T.F. was against the manifest weight of the evidence. However, we have recognized that "[p]hysical evidence is not required to sustain a conviction against a manifest weight challenge." *Flores-Santiago*, 2020-Ohio-1274, at ¶ 37 (8th Dist.), citing *State v. Robertson,* 2018-Ohio-2934, ¶ 32 (8th Dist.). Rather, "[a] conviction may rest solely on the testimony of a single witness, including the victim, if believed, and there is no requirement that a victim's testimony be corroborated to be believed." *Id.* at ¶ 38, citing *State v. Black,* 2019-Ohio-4977, ¶ 43 (8th Dist.).

{¶ 76} And finally, Flynn claims that "it is not insignificant S.D. and K.D. had identified different perpetrators that were not Flynn." However, K.D. explained that the reason she initially claimed it was her uncle's friend who had abused her was because, at the time, she still cared about Flynn and did not want him to get in trouble. S.D. stated that she projected the abuse onto someone other than Flynn but admitted that the other person had never even been in the same room with her alone. In short, S.D. changed her story when she realized the other person could go to jail.

{¶ 77} Here, the trial court was in the best position to evaluate the veracity and credibility of the victims' testimonies. The court was likewise free to "accept or reject any or all testimony of any witness." *Singh,* 2018-Ohio-5235, at ¶ 21 (8th Dist.), citing *Smith,* 2010-Ohio-4006, at ¶ 16 (8th Dist.). After reviewing the entire record, particularly the testimony of the witnesses presented, we cannot say the finder of fact lost its way in believing the testimony of the victims, whether in full or in part, in support of its verdict. This is not one of those extraordinary cases where the convictions are against the manifest weight of the evidence.

{¶ 78} Accordingly, Flynn's second assignment of error is overruled.

## C. Third Assigned Error for Review — Amendment of the Indictment

{¶ 79} In his third assigned error for review, Flynn argues that the trial court erred in allowing the State to amend the indictment concerning the date ranges set forth in certain counts, as well as amending the type of sexual conduct alleged in

specific counts. After a thorough review of the record, we find that the trial court did not err in allowing the State to amend the indictment.

### 1. Applicable Law and Standard of Review

{¶ 80} Crim.R. 7(D) provides that the trial court may "at any time before, during, or after a trial amend the indictment . . . in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." "A change in the name or identity of a crime charged occurs when the offense alleged in the indictment and the offense alleged in the amended indictment contain different elements that require independent proof." *State v. Buchanan,* 2017-Ohio-1361, ¶ 22 (8th Dist.), citing *State v. Mullins,* 124 Ohio App.3d 112, 114 (12th Dist. 1997).

{¶ 81} "Where the amendment does not change the name or identity of the offense, a reviewing court will not disturb the trial court's decision to permit the amendment absent an abuse of discretion and a showing of prejudice." *Palmer-Tesema*, 2020-Ohio-907, at ¶ 69 (8th Dist.), citing *Buchanan* at ¶ 22, citing *State v. Moore,* 2016-Ohio-2836, ¶ 29 (8th Dist.). "The term 'abuse of discretion' means a ruling that is unreasonable, arbitrary, or unconscionable." *State v. McAlpin,* 2026-Ohio-148, ¶ 14. However, "[c]ourts do not have discretion to erroneously apply the law." *Shiftmed, L.L.C. v. Westchester Parkway Consulting, L.L.C.,* 2025-Ohio-1554, ¶ 18 (8th Dist.), citing *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 39. We are reminded that "when applying the abuse-of-discretion standard[,] 'we should not

substitute our judgment for that of the trial court.'" *T.C. v. R.B.C.,* 2025-Ohio-1544, ¶ 10 (8th Dist.), quoting *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.).

### 2. Analysis

{¶ 82} Flynn claims that there were two types of amendments to the indictment that were improper. These amendments included the alleged date ranges set forth in the indictment with respect to certain counts, as well as the types of sexual conduct alleged with respect to specific counts. Each type of amendment will be addressed separately.

### a. Amendments to the Date Ranges

{¶ 83} Flynn claims that the trial court erred in allowing the State to amend the alleged dates of the offenses as set forth in Counts 1, 2, 3, 7, 8, 9, 15, 16, and 17 of the indictment.

{¶ 84} It is well established that the specificity with respect to the time and date of an offense is not required in an indictment. *State v. Williams,* 2013-Ohio-4471, ¶ 12 (8th Dist.), quoting *State v. Bogan,* 2005-Ohio-3412, ¶ 10 (8th Dist.). Nor does amending the dates in an indictment change the name or the identity of the alleged offense. *Moore,* 2016-Ohio-2836, at ¶ 30 (8th Dist.). Rather, "the [S]tate's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged." *Williams* at ¶ 12, citing *Bogan* at ¶ 10. "This is especially the case where the victim is a child victim of repeated sexual assault[.]" *Id.* at ¶ 13, citing *State v. Yaacov,* 2006-Ohio-5321, ¶ 17 (8th Dist.). We have reasoned that "[t]his is partly due to the fact that the specific date and time of

the offense are not elements of the crimes charged." *Yaacov* at ¶ 17, citing *State v. Gus,* 2005-Ohio-6717, ¶ 6 (8th Dist.). "Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time." *Id.,* citing *State v. Mundy,* 99 Ohio App.3d 275, 296 (2d Dist. 1994). In short, "when dealing with the memory of a child, reasonable allowances for inexact dates and times must be made." *Williams* at ¶ 13, citing *State v. Barnecut,* 44 Ohio App.3d 149, 152 (5th Dist. 1988).

{¶ 85} Nonetheless, "an exception to this general rule exists when the failure to allege a specific date 'results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified.'" *Yaacov* at ¶ 18, quoting *State v. Morgan,* 2001 Ohio App. LEXIS 2104, *4 (6th Dist. May 11, 2001).

{¶ 86} Here, changing the alleged dates set forth in the indictment did not change the name or identity of the offenses. Nor does Flynn claim that changing the dates prevented him from presenting an alibi witness or claim that he was somewhere else at the time of the dates alleged.

{¶ 87} Since the amendment of the indictment with respect to the alleged dates did not change the name or identity of the offenses charged or prejudice Flynn in a manner that materially affected his alleged defense, the trial court did not abuse its discretion in allowing the State to amend the date ranges set forth in the indictment.

## b. Amendments Concerning Alleged Sexual Conduct

{¶ 88} Flynn also alleges that the trial court erred in allowing the State to amend the specific types of sexual conduct alleged in Counts 12, 13, and 14 of the indictment. Particularly, the "to wit" clauses in Counts 12 and 13 were amended, removing the word "digital" and replacing it with "penetration of vagina" in Count 12 and "penetration of anus" in Count 13. Count 14 was also amended, removing the words "with penis" from the "to wit" clause.

{¶ 89} These amendments did not change the name or the identity of the offenses charged. We have recognized that amending a sex-offense charge in an indictment from one form of sexual conduct to another type of sexual conduct does not change the name or the identity of the offense. *Palmer-Tesema,* 2020-Ohio-907, at ¶ 70 (8th Dist.), citing *State v. Abdullah,* 2006-Ohio-5412, ¶ 24 (10th Dist.) (recognizing that "[a]mending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the offense").

{¶ 90} Rape, in violation of R.C. 2907.02(A)(1)(b), as charged in Counts 12 and 13 of the indictment, requires proof that the defendant "engaged in sexual conduct with another[.]" R.C. 2907.01(A) defines "sexual conduct" to include "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." As such, "the type of sexual conduct was not an element of the offense, and the state's amendment to the specific

type of sexual conduct did not contain any different elements that required independent proof." *Palmer-Tesema* at ¶ 71.

{¶ 91} GSI, in violation of 2907.05(A)(4), as charged in Count 14, requires proof that the defendant "had sexual contact with another[.]" R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Sexual contact does not require such contact be made with one's penis and therefore is not an element of the offense which required independent proof. As such, the deletion of "with penis" from the "to wit" clause in Count 14 did not change the name or identity of the offense.

{¶ 92} Nonetheless, Flynn alleges these amendments violated his due process rights because the facts presented to the grand jury were different with respect to the amended counts. He directs us to our decision in *State v. Vitale,* 96 Ohio App.3d 695 (8th Dist. 1994). His reliance on *Vitale* is misplaced.

{¶ 93} In *Vitale,* we held that an amendment to the defendant's indictment was prejudicial because the amendment encompassed a different potential offense, occurring at a different address, over an expanded period of time and that this different offense relied on evidence not presented to the grand jury that issued the indictment. In *Palmer-Tesema,* we distinguished *Vitale* on a fact pattern similar to the case at bar, finding that the amendment "did not allow the state to argue a different rape, at a different address, at a different date. Nor did it allow the jury to

find [the defendant] guilty of a different offense than indicted." *Palmer-Tesema,* 2020-Ohio-907, at ¶ 73 (8th Dist.). Rather, the amendment in *Palmer-Tesema* merely changed the type of sexual conduct alleged. *Id.*

{¶ 94} Finally, the amendment did not prejudice Flynn's defense because Flynn's defense was not based on the distinctions between the types of sexual conduct that may have occurred nor when the alleged offenses occurred. Rather, Flynn's defense rested on the credibility of the victims challenging whether the alleged conduct occurred at all.

{¶ 95} Since the amendments made to the indictment did not change the name or identity of the offenses charged, we find that the trial court did not abuse its discretion by amending the indictment. Accordingly, Flynn's third and final assignment of error is overruled.

## III. Conclusion

{¶ 96} Following a thorough review of the record and applicable law, we overrule Flynn's three assigned errors for review. His convictions are affirmed.

{¶ 97} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
TIMOTHY W. CLARY, J., CONCUR